IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| GATLINBURG AIRPORT AUTHORITY, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:06-CV-90 |
| GRANT CANTWELL, *et al.*, | ) ) ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION**

This civil action is before the court for consideration of "United States' Motion for Summary Judgment" [doc. 24] and the "Motion for Summary Judgment of Grant Cantwell" [doc. 30]. Defendant, Grant Cantwell ("Cantwell"), has filed a response to and a reply regarding the United States' motion [docs. 31, 33]. Defendant, United States,[1] has filed a response to Cantwell's motion [doc. 25].

The court has determined that oral argument is not necessary, and the motions are ripe for the court's determination. For the reasons stated herein, the United States' motion will be granted, and Cantwell's motion will be denied.

---

[1] The Internal Revenue Service is the governmental agency involved in this case.

*Background*

This case originated in the Circuit Court for Sevier County, Tennessee as a condemnation action for expansion of the Gatlinburg Airport. Named as defendants in a petition filed January 25, 2006, were the property owner Cantwell and several lienholders of record who held liens against a company named Magnetic Ideas, Inc. ("Magnetic"), but not against Cantwell. The United States removed the case to this court [doc. 1]. Cantwell filed a cross-claim [doc. 7] in which he explained the involvement of Magnetic, stated his contention that Magnetic had no property interest to which the liens could have attached, and asked the court to declare the liens of the cross respondents null and void as they relate to the property so he would receive the full amount of the proceeds from the condemnation. Only the issues concerning the federal tax lien remain for resolution, as all issues concerning the other lienholders have now been resolved.

The parties have submitted an excellent and beneficial "Joint Stipulation of Facts" [doc. 26] that the court adopts and incorporates herein as if set out verbatim. However, a brief recitation of the facts at this point will facilitate the court's discussion.

On July 12, 2000, Cantwell conveyed to Magnetic two tracts of real property located in Sevierville, Tennessee. The warranty deed was prepared by Cantwell's counsel of record herein and contained the description for a single tract of land. The selling price was $450,000: $50,000 to be paid at closing and $400,000 to be paid to Cantwell in installments, secured by a promissory note signed by Magnetic and payable to Cantwell and his wife. The

promissory note called for 59 monthly payments of $3,218.49 and a final balloon payment of $386,739.07. The $400,000 balance was secured by a deed of trust against the real property that was also prepared by Cantwell's counsel of record. Both the warranty deed and deed of trust were recorded on July 13, 2000.

Some months later, Cantwell discovered that the warranty deed reflected only one of the two tracts of property sold to Magnetic. In an effort to correct the situation, Cantwell's representatives prepared a correction warranty deed and corrected deed of trust that were sent to Magnetic. Magnetic's representative executed the correction warranty deed and returned it to Cantwell but did not return the corrected deed of trust.

The correction warranty deed that reflected the sale to Magnetic of tract 1 and tract 2 was recorded on November 7, 2002. The corrected deed of trust that secured tract 2 was never recorded. On September 4, 2003, the Internal Revenue Service ("IRS") filed a notice of tax lien against Magnetic in the amount of $143,241.74.

On February 2, 2004, Cantwell sued Magnetic in state court to set aside the correction warranty deed until the corrected deed of trust was recorded. Although Cantwell did not name the IRS as a defendant or give the IRS notice of the lawsuit, he did reference in the complaint that a federal tax lien had been filed against Magnetic. On June 11, 2004, the Chancery Court for Sevier County, Tennessee entered a "Judgment by Default Setting Aside Conveyance" that determined the correction warranty deed was to be "set aside and declared null and void *ab initio*."

*Analysis*

I.

To satisfy a tax deficiency, the government may impose a lien on the "property" and "property rights" of the taxpayer." *See* 26 U.S.C. §§ 6321 and 6331. The language of §§ 6321 and 6331(a) is broad and reveals that Congress intended to reach every interest in property that a taxpayer might have. *Drye v. United States*, 528 U.S. 49, 56 (1999). "The federal tax lien statute itself creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Craft*, 535 U.S. 274, 278 (2002) (quotation marks and citations omitted). To determine whether a taxpayer has "property" or "property rights" under the federal tax lien statute, the court looks to state law "to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayers' state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye*, 528 U.S. at 58 (citations omitted).

The property at issue is tract 2 in the correction warranty deed. Because the corrected deed of trust was never recorded, Cantwell's interest in that tract was never secured. On September 4, 2003, when the IRS filed its notice of tax lien against Magnetic, it covered "all property and rights to property, whether real or personal, belonging to" Magnetic. 26 U.S.C. § 6321. The correction warranty deed covering tract 2 was filed on November 7, 2002. Thus, when the tax lien was filed September 4, 2003, Magnetic had a recorded warranty deed

4

showing that it held fee simple title to tract 2, that it had "full power, right and authority to convey the same," and that the property was "free from all encumbrances." This, according to the United States, was the property to which the federal tax lien attached.

Cantwell contends that Magnetic had no rights in the property and that the tax lien is invalid. He argues that Magnetic "fraudulently refused to execute the Corrected Deed of Trust covering Tract 2" and that under Tennessee law that alone made the conveyance void. There is absolutely no proof in the record of fraud. The only reference to fraud is Cantwell's unsubstantiated contention. Cantwell also argues that because the chancery court judgment declared the correction warranty deed null and void *ab initio*, Magnetic had no interest in tract 2 to which the tax lien could attach. The court does not agree with either of Cantwell's contentions.

In *Drye*, the taxpayer, Rohn Drye, owed $325,000 on unpaid tax assessments, and the IRS filed valid tax liens against his property and property rights. Drye's mother died leaving an estate of $233,000 to him, her only heir. He petitioned and was appointed the administrator of his mother's estate, but several months later filed a written disclaimer of all interest in the estate. Arkansas law permits an heir to disavow his or her inheritance by filing a written disclaimer within nine months of the death of the decedent. "The disclaimer creates the legal fiction that the disclaimant predeceased the decedent; consequently, the disclaimant's share of the estate passes to the person next in line to receive that share. The disavowing heir's creditors, Arkansas law provides, may not reach property thus disclaimed." *Drye*, 528

U.S. at 53. The estate passed to Drye's daughter who succeeded her father as administrator, and she established the Drye family trust. The probate court declared Drye's disclaimer valid and distribution of the estate was used to fund the trust, the beneficiaries of which were Drye and his wife.

However, the Supreme Court held that Drye's "disclaimer did not defeat the federal tax liens." *Id*. at 52. "[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the federal tax lien provision], state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States." *Id*. (quoting *United States v. Bess*, 357 U.S. 51, 56-57 (1958)).

The holding in *Drye* is dispositive of this case. State law clearly recognizes that when the tax lien was filed on September 4, 2003, Magnetic held fee simple title to tract 2; the title was unencumbered; and Magnetic had the right to convey the property. *Cf. Rogers v. Young*, No. C.A.02A019604CH00081, 1997 WL 401958, at *4 ( Tenn. Ct. App. July 17, 1997) ("[H]aving established ownership of the disputed property by virtue of a recorded deed from the rightful owner thereof, plaintiff is declared to be the true and lawful owner of all right, title and interest in and to said property in dispute."). That property interest was sufficient for the federal tax lien to attach at that time, and it did. Just as the retroactive application of the state disclaimer law could not defeat the federal tax lien in *Drye*, so the retroactive declaration by the chancery court judgment that the correction warranty deed was null and void *ab initio* does not defeat the federal tax lien in this case. The subsequent state

6

court default judgment cannot disengage the federal tax lien nor can it alter the nature of Magnetic's property interest for purposes of the federal tax lien at the time it attached.[2]

In addition, "[a] federal tax lien attaches to a taxpayer's property when unpaid taxes are assessed, and continues to attach until either the tax is paid or the lien becomes unenforceable because of lapse of time. 26 U.S.C. §§ 6321, 6322. The lien continues to attach to a taxpayer's property regardless of any subsequent transfer of the property." *United States v. Donahue Indus., Inc.*, 905 F.2d 1325, 1330-31 (9th Cir. 1990) (citing *United States*

---

[2] Contrary to Cantwell's contention, the chancellor did not find that the correction warranty deed was not supported by any consideration. The chancellor entered a default judgment; thus, he did not reach the merits of any of Cantwell's claims. In this court's opinion, any failure of consideration would be the result of the unilateral conduct of Cantwell and his representatives in not following through in obtaining and recording an executed deed of trust on tract 2. In addition, the court believes that under Tennessee law it would have been inappropriate to grant Cantwell any of the correction or reformation relief asked for in the complaint. "Under Tennessee law, '[t]o be the subject of correction, a mistake in an instrument must have been mutual or there must have been a mistake of one party induced by the fraud of the other.'" *In re Miller*, 286 B.R. 334, 339 (Bankr. E.D. Tenn. 1999) (quoting *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995)).

Further, "a court of equity will not reform a written instrument even upon a showing of mutual mistake if the rights of innocent third parties have intervened." *Miller*, 286 B.R. at 341 (citing *Needham v. Caldwell*, 154 S.W.2d 535, 538 (1941) ("[A] release or satisfaction entered by accident or inadvertence . . . or by a mistake as to an essential fact, such that it is not in accord with the real intention of the parties, may be set aside and the mortgage reinstated, except as the rights of third parties may prevent.")). There is no proof of fraud in this case. Cantwell's totally unsubstantiated statement in his brief that Magnetic "fraudulently refused" to execute the corrected deed of trust hardly proves fraud. Nor do the events that give rise to this litigation constitute mutual mistake. The record before the court indicates that the unfortunate events being dealt with here are the result of the actions of Cantwell and his representatives in allowing the correction warranty deed to be filed without also filing the corrected deed of trust to secure tract 2. Yet, even if there were mutual mistake present in these facts, between the time of the mistake and discovery of that mistake, the IRS filed its tax lien on the subject property. Thus, the rights of an innocent third party had intervened, which would arguably make reformation inappropriate.

However, even if the chancellor had reached the merits of Cantwell's requested relief, the result would still be the same. The action by the state court, whether in the form of a default judgment or a decision on the merits, would be ineffective to defeat the federal tax lien that attached to Magnetic's property interest in tract 2 that it held at the time the tax lien was filed.

*v. Bess*, 357 U.S. 51, 57 (1958). "It is settled federal law that transfers subsequent to the attachment of a federal lien do not affect the lien in any way." *United States v. Big Value Supermarkets, Inc.*, 898 F.2d 493, 497 (6th Cir. 1990) (also citing *Bess*, 357 U.S. at 57 ("it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere").

This "transfer" principle should apply here. The federal tax lien attached to tract 2 when Magnetic held the fee simple title, and it continues to be attached to that tract. This is the true, even if the title to tract 2 has been "transferred" back to Cantwell by action of the state court judgment.

The court thus finds that the federal tax lien on tract 2 is valid and superior to Cantwell's interests. Based on that finding, the IRS is entitled to proceeds from the condemnation.

II.

Cantwell argues that common law principles of equity and fairness should be applied to invalidate and dismiss the federal tax lien. While he cites quite a number of case authorities in which federal courts employed equitable principles, none of the cases concern federal tax liens.

"The federal tax lien is a constitutional exercise by Congress of its power to lay and collect taxes and represents supreme law of the land." *In re May Reporting Servs., Inc.*, 115 B.R. 652, 655 (Bankr.D.S.D. 1990) (citations omitted). Attendant with that very significant power is the fundamental principle "that liens for federal taxes are entirely statutory and the provisions for their collection are to be strictly followed according to federal law." *United States v. Heasley*, 283 F.2d 422, 428 (8th Cir. 1960) (citations omitted). "Statutes create the tax lien, prescribe its duration and provide for the manner of releasing the lien." *Id.* (citations omitted). Further, the laws that aid in the collection of government revenues should be liberally construed. *May Reporting*, 115 B.R. at 655.

The enforcement scheme of the federal tax lien statutes is comprehensive and complex. Cantwell has not offered any authority or adequate justification for why this court should depart from clearly established statutory law that must be strictly applied in this case. While equity and fairness make for worthy and noble argument, they cannot compete in the realm of the statutory federal tax lien. The court will not apply equitable principles in this case.

III.

Though not determinative of the court's rulings on the pending motions, the court will address the United States' additional argument that the judgment of the chancery court is not binding on the United States because Cantwell failed to join the United States in

9

his 2004 state court lawsuit.[3] For support, the United States relies on 26 U.S.C. § 7425(a). That statutory provision provides in pertinent part:

> If the United States is not joined as a party, a judgment in any civil action or suit described in subsection (a) of section 2410 of title 28 of the United States Code, or a judicial sale pursuant to such a judgment, with respect to property on which the United States has or claims a lien under the provisions of this title - -
>
> (1) shall be made subject to and without disturbing the lien of the United States, if notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced . . . .

26 U.S.C. § 7425. The provision referred to in § 7425, 28 U.S.C. § 2410(a) states:

> Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter –
>
> (1) to quiet title to,
> (2) to foreclose a mortgage or other lien upon,
> (3) to partition,
> (4) to condemn, or
> (5) of interpleader or in the nature of interpleader with
> respect to,
>
> real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410(a).

---

[3] There is no indication in the record why Cantwell referenced the federal tax lien in his chancery court complaint but did not name the IRS as a party or give the IRS notice of the lawsuit.

Thus, in order to determine whether § 7425 applies, the court must decide whether Cantwell's state court action is one of those listed under § 2410. The complaint was titled "Complaint to Set Aside Deed" and sought to have the correction warranty deed set aside. Therefore, the action was not to foreclose a mortgage or lien, to partition, or to condemn.

The complaint was also not one to quiet title. An action to quiet title is "[a] proceeding to establish a plaintiff's title to land by compelling the adverse claimant to establish a claim or be forever estopped from asserting it." *Black's Law Dictionary* 30 (7th ed. 1999). In Tennessee, to bring a quiet title action a claimant must have title or possession. *May v. Abernathy*, 130 S.W.2d 135, 139 (Tenn. Ct. App. 1939). Cantwell had conveyed title to Magnetic who was in possession of the property. Cantwell did not want to quiet his title but to protect his security interest in the property he had sold.

The only remaining possible action listed under § 2410 is interpleader, but that too does not describe the chancery court action. Interpleader is "[a] suit to determine a right to property held by a usu[ally] disinterested third party (called a *stakeholder*) who is in doubt about ownership and who therefore deposits the property with the court to permit interested parties to litigate ownership." *Black's Law Dictionary* 823 (7th ed. 1999). While Cantwell mentioned in the chancery court complaint the various liens filed against Magnetic, he did not include the lienholders as parties; he sued only Magnetic and its owner. Thus, the complaint was not even in the nature or appearance of an interpleader action.

It certainly appears that the United States should have been given notice of the chancery court lawsuit, especially in light of the reference to its lien in the complaint. However, reliance on § 7425 is misplaced in that the chancery court complaint does not fall within the types of actions listed in § 2410. The court sees no reason to go beyond the plain language of the statutory provisions to determine their meaning and application. In any event, the fact that the IRS was not made a party to the state court lawsuit is not, in the court's opinion, dispositive of the issues in this case. The federal tax lien is valid and superior to Cantwell's interests for the reasons already set out above.

IV.

This case was removed to this court by the IRS on the jurisdictional basis of its tax lien. The federal tax lien issue has now been resolved by the court. When a status conference was held on October 19, 2006, the court proposed to the parties that once the issues concerning all of the liens had been resolved, the case would be returned to state court for completion of the condemnation proceedings. That time has now arrived.

Therefore, unless the parties can provide the court with a very compelling reason why it should retain jurisdiction, this case will be remanded to the Circuit Court for Sevier County, Tennessee. The order that will accompany this opinion will provide a time frame for informing the court of any such reasons.

V.

Accordingly, for the reasons stated herein, the United States' motion for summary judgment will be granted. Cantwell's motion for summary judgment will be denied. An order reflecting this opinion will be entered.

ENTER:

<u>     s/ Leon Jordan     </u>
United States District Judge